UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OJMAR US, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SECURITY PEOPLE, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-04948-HSG<br><br>**ORDER DENYING PLAINTIFF OJMAR U.S., LLC'S MOTION FOR PRELIMINARY INJUNCTION**<br><br>Re: Dkt. No. 44 |

On December 22, 2016, Plaintiff Ojmar U.S., LLC ("Ojmar") filed its motion for preliminary injunction. Dkt. No. 44 ("Mot."). On January 5, 2017, Defendants Security People, Inc. and Asil Gokcebay (collectively, "Digilock") filed their opposition. Dkt. No. 49 ("Opp'n"). On January 12, 2017, Ojmar filed its reply. Dkt. No. 51. Ojmar's motion seeks to enjoin Digilock from (1) threatening Ojmar or its customers with litigation based on claim 4 of Digilock's U.S. Patent No. 6,655,180 ("'180 Patent") and (2) enforcing the provisions of Digilock's exclusive dealing contracts with three locker original equipment manufacturers ("OEMs"). Mot. at 1–2, 7 & n.1. For the reasons articulated below, the Court **DENIES** Ojmar's motion.[1]

Federal Rule of Civil Procedure 65 allows the court to grant a preliminary injunction to enjoin conduct pending a trial on the merits. Fed. R. Civ. P. 65(a). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008). To receive a preliminary injunction, a plaintiff "must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Id.* at 20. The

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

Ninth Circuit has held that "a 'likelihood' of success per se is not an absolute requirement." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014). "Rather, serious questions going to the merits and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* (internal quotation marks omitted). However, under either the *Winter* test or the "serious questions" test, the court may not issue a preliminary injunction unless it finds that "a certain threshold showing is made" as to each of the four elements. *Leiva-Perez v. Holder*, 640 F.3d 962, 966 (9th Cir. 2011).

Ojmar fails to demonstrate that it is likely to suffer irreparable harm under either asserted ground for a preliminary injunction. Ojmar first seeks to enjoin Digilock from pursuing "baseless" legal action under claim 4 of the '180 Patent, arguing that Digilock is attempting "to maintain the *in terrorem* effect on the marketplace for as long as possible." Mot. at 7. However, Ojmar "must do more than merely allege imminent harm sufficient to establish standing"; it "must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief." *Caribbean Marine Servs. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988) (emphasis in original). Ojmar cannot assert "[s]peculative injury . . . [as] the basis for a finding of irreparable harm. *See in re Excel Innovations, Inc.*, 502 F.3d 1086, 1098 (9th Cir. 2007). Digilock has not filed a claim against Ojmar based on the '180 Patent since 2015, long before the Patent Trial and Appeals Board ("PTAB") decision on October 26, 2016 deeming claim 4 unpatentable as written. Dkt. No. 45 ("Callaway Decl.") ¶¶ 22–24 & Ex. 14. Therefore, Ojmar's allegation that Digilock continues to threaten it with sham litigation is too speculative to establish irreparable harm. *See Baldridge*, 844 F.2d at 674; *in re Excel*, 502 F.3d at 1098.

Ojmar next seeks to enjoin Digilock from enforcing exclusive dealing contracts with three OEMs: Legacy Lockers, Ideal Products, and Club Resource Group ("CRG"). Mot. at 1–2, 7. The parties entered into these contracts between February and April of 2016. Callaway Decl. Exs. 16–18. The exclusivity contracts prevent these three OEMs from purchasing, promoting, or recommending electronic keypad locks ("EKLs") from manufacturers other than Digilock.

Callaway Decl. Ex. 16 ("Digilock Contract") at 1.[2] However, the contracts allow the OEMs to supply a competitor's EKL to an end customer if the customer maintains its request for a non-Digilock product. *Id.* at 4. Ojmar claims that the contracts threaten its survival in the U.S. market, damage customer relationships and goodwill, and obstruct business opportunities.[3] Mot. at 21.

The Court first assesses Ojmar's assertion that the exclusivity contracts represent "an existential threat to the survival of [its] business." Mot. at 21. While "[t]he threat of being driven out of business is sufficient to establish irreparable harm," evidence of economic harms or lost profits are typically insufficient to demonstrate that the plaintiff's business is "threatened with extinction." *See Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473–74 (9th Cir. 1985). Moreover, the plaintiff does not meet its burden where there is not a causal relationship between the defendant's conduct and the threat of irreparable harm. *See Oakland Tribune, Inc. v. Chronicle Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) (rejecting plaintiff's argument for irreparable harm where plaintiff could neither attribute financial losses to defendant's conduct nor demonstrate foreclosure from the market).

Here, Ojmar's declining sales in 2015 and expected losses in 2016 do not establish a threat to the company's short-term survival. *See* Dkt. No. 44-1 ("Oonk Decl.") ¶ 23; *Int'l Medcom v. S.E. Int'l, Inc.*, No. 15-cv-03839-HSG, 2015 WL 7753267, at *5 (N.D. Cal. Dec. 2, 2015) (denying preliminary injunction where plaintiff's financial trouble did not demonstrate imminent risk to its presence in the market). Losses in 2015 predate the introduction of the exclusivity contracts in early 2016 and should not be considered under this analysis. *See* Oonk Decl. at ¶ 23; *Oakland Tribune*, 762 F.2d at 1377 (rejecting plaintiff's claim for failure to show causation between sales

---

[2] The exclusive dealing contracts are forms with largely identical provisions. *See* Callaway Decl. Exs. 16–18. For simplicity, citations are provided to Exhibit 16, though Exhibits 17 and 18 contain parallel provisions.

[3] Ojmar asserts a narrow definition of the relevant "market" comprised only of EKL locker locks. Mot. at 11–12. Digilock contests this definition and argues for a broader characterization of the "market" inclusive of both electronic and mechanical locker locks. Opp'n at 9–16. Ojmar fails to demonstrate irreparable harm even under the narrower definition. Therefore, there cannot be irreparable harm under the broader definition, as the exclusivity contracts concern only EKLs and do not implicate the market for mechanical locker locks. The Court uses Ojmar's narrow definition in this analysis for convenience and makes no finding as to how the relevant "market" should be defined.

3

losses and defendant's conduct). Moreover, Ojmar's prediction that sales and revenue would not meet "conservative projections" for 2016 is insufficient to support a finding that Ojmar's existence in the market is threatened. *See* Oonk Decl. ¶ 23; *Am. Passage*, 750 F.2d at 1474 (finding that plaintiff's affidavits regarding sustained and forecasted losses were alone insufficient to show it was "threatened with extinction").

Moreover, Ojmar's fear of foreclosure from the market is unsupported. While Ojmar claims it "faces being cut off from its customer OEMs and unable to reach end users through the only effective channel to market," the Court is unconvinced that Ojmar has no alternative avenues for sales. *See* Mot. at 2. Ojmar asserts that Legacy Lockers, Ideal Products, and CRG together represent 50–60% of the market for EKLs, leaving a considerable portion of the market unaffected by the exclusivity contracts. *See* Oonk Decl. ¶ 30.[4] Furthermore, the three OEMs are not bound by the exclusivity provisions if a customer requests an Ojmar EKL product. *See* Digilock Contract at 4. Ojmar can also market EKLs directly to end customers to generate demand and represents that it has worked closely with end customers in the past. *See* Oonk Decl. at ¶ 12 ("In our effort to penetrate the market, I built relationships with end customers, architects, and OEMs."). Additionally, the exclusivity contracts are terminable at will, *see* Digilock Contract at 2, and nothing prevents Ojmar from offering its own contracts to the OEMs, *see Am. Passage*, 750 F.2d at 1473 (finding that plaintiff was not foreclosed from market where it was free to offer its own exclusive or non-exclusive packages to clients). In short, Ojmar has failed to demonstrate that the exclusivity contracts foreclose its access to the market.

Ojmar also asserts that the exclusivity contracts will cause irreparable harm by damaging

---

[4] James Oonk, Ojmar's Sales Director for North America, claims that these three OEMs along with the OEM Hollman represent approximately 70% to 80% of the U.S. market for EKLs. Oonk Decl. ¶ 30. He acknowledges that "Hollman has not actually signed Digilock's form contract yet," but nonetheless asserts "that Hollman has continued submitting bids including Digilock locks at competitive pricing and that they [sic] are not planning to display our locks at IHRSA in March 2017 – so Hollman is acting as though it has accepted Digilock's terms." *Id.* However, Mr. Oonk admits elsewhere in his declaration that "Hollman generally did not recommend our locks to their customers and would supply Ojmar locks only if the customer specifically required it." *Id.* ¶ 11. Rather than demonstrating that Hollman is bound by a contract that it never signed, these facts suggest that Hollman simply continues to prefer locks other than those sold by Ojmar. Therefore, the Court is not persuaded that the exclusivity contracts foreclose Ojmar from selling EKLs to Hollman.

4

its reputation and customer goodwill and obstructing business opportunities. Mot. at 22. As the Ninth Circuit has explained, "[e]vidence of loss of control over business reputation and damage to goodwill could constitute irreparable harm." *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). However, Ojmar fails to provide any non-conclusory statements as to how the exclusivity contracts will damage its reputation or customer goodwill. *See* Mot. at 22 ("The customer relationships and goodwill that Ojmar was developing with the key locker OEMs in 2012-2014 have been severely damaged and the harm may well become permanent if Digilock is not stopped now."). This is insufficient to establish likelihood of irreparable harm. *See Herb Reed Enters.*, 736 F.3d at 1251 ("Those seeking injunctive relief must proffer *evidence* sufficient to establish a likelihood of irreparable harm." (emphasis added)).

Furthermore, loss of prospective business opportunities is generally an economic harm that can be valued and compensated upon later success at trial. *See Am. Passage*, 750 F.2d at 1473–74 ("Monetary damages are not usually sufficient to establish irreparable harm."); *Telephia v. Cuppy*, No. C 04-03508, 2005 WL 588441, at *4 (N.D. Cal. Mar. 11, 2005) (concluding that defendant could be compensated for the value of "the right to work exclusively in the wireless technology market, and to keep defendants from engaging in business relationships in competition with plaintiff"). Ojmar relies on *Celsis In Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922 (Fed. Cir. 2012), for the proposition that in some instances "[t]here is no effective way to measure the loss of sales or potential growth—to ascertain the people who did not knock on the door." *See* Mot. at 22 (quoting *Celsis*, 664 F.3d at 930). However, the Federal Circuit's central concern in *Celsis* was the inability to evaluate the impact of patent infringement on the plaintiff's business. *See* 664 F.3d at 930 ("As its name implies, the irreparable harm inquiry seeks to measure harms that no damages payment, however great, could address."). There, the plaintiff offered unrebutted expert testimony substantiating the difficulty of quantifying its losses. *Id.* at 930–31. The testimony credited the plaintiff's product market as the source of this difficulty, given the presence of a single patentee manufacturer with a growth-stage product and the existence of customer buying habits that were particularly sensitive to price erosion. *Id.* at 930. In light of this market dynamic, the Federal Circuit held that the district court did not err in finding that the plaintiff would suffer

irreparable harm absent a preliminary injunction. *Id.* at 931. Here, in contrast, Ojmar has provided no similar evidentiary basis for its claim of lost business opportunity. In fact, by asserting both initial and conservative sales projections, Ojmar strongly suggests that its lost business opportunities in the EKL market can be adequately measured, and thus compensated if Ojmar ultimately prevails in this case. *See* Oonk Decl. ¶¶ 5, 23.

Lastly, Ojmar filed its motion for preliminary injunction after a long delay. Despite being aware of the exclusivity contracts in "early 2016," Ojmar did not file suit until August 22, 2016, and did not file the present motion until December 22, 2016. *See id.* ¶ 28; Dkt. No. 1; Mot. This "long delay before seeking preliminary injunction implies a lack of urgency and irreparable harm." *See Oakland Tribune*, 762 F.2d at 1377; *see also Eros Tours & Travel, Inc. v. Infinitywaves, LLC*, No. CV 14-5095 PA (PJWX), 2015 WL 11457691, at *3 (C.D. Cal. Feb. 9, 2015) (finding that "delay alone warrant[ed] denial" of plaintiffs' preliminary injunction motion, where approximately ten months had passed since discovery of defendant's allegedly unlawful conduct, and nearly six months had passed since plaintiffs filed the action).

Having found that Ojmar is unable to show a likelihood of irreparable harm in the absence of a preliminary injunction, the Court does not reach the other elements of the test. *See Leiva-Perez*, 640 F.3d at 966 (requiring threshold showing as to all four elements).

For the foregoing reasons, Ojmar's motion for a preliminary injunction is **DENIED**.

**IT IS SO ORDERED.**

Dated: 7/7/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge