UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OJMAR US, LLC,<br><br>   Plaintiff,<br><br> v.<br><br>SECURITY PEOPLE, INC., et al.,<br><br>   Defendants. | Case No. 16-cv-04948-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Re: Dkt. No. 21 |

On October 31, 2016, Defendants Security People, Inc. ("Digilock") and Asil Gokcebay moved to dismiss the first amended complaint filed by Plaintiff Ojmar U.S., LLC ("Ojmar"). Dkt. No. 21 ("Mot."); *see also* Dkt. No. 14-4 ("FAC"). On November 28, 2016, Plaintiff opposed the motion. Dkt. No. 34 ("Opp."). On December 12, 2016, Defendants replied. Dkt. No. 39 ("Reply"). After careful consideration, the Court **GRANTS** in part and **DENIES** in part the motion.[1]

I. **BACKGROUND**

The operative complaint asserts the following causes of action: (1) monopolization and (2) attempted monopolization under the Sherman Act, 15 U.S.C. § 2; (3) exclusive dealing under the Clayton Act, 15 U.S.C. § 14; (4) combination to monopolize under the Cartwright Act, Cal. Bus. & Prof. Code § 16720, *et seq.*; (5) false advertising under the Lanham Act § 43(a), 15 U.S.C. § 1125; (6) trade libel; (7) intentional interference with economic relationship; (8) unfair competition, Cal. Bus. & Prof. Code § 17200; and (9) declaration of inequitable conduct. FAC ¶¶ 68–170. Defendants seek dismissal of the operative complaint on three primary grounds: (1) Plaintiff fails to state facts supporting the personal liability of Asil Gokcebay for all claims; (2)

---

[1] The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b).

1   claims 1–4 against Digilock fail to allege a plausible product market; and (3) claims 3–4 against
2   Digilock fail to plausibly allege substantial foreclosure of the market in electronic keypad locks
3   ("EKLs"). Mot. at 11–20, 24.[2] The relevant facts are stated in the course of the Court's analysis.

**II.     LEGAL STANDARD**

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). And even where facts are accepted as true, "a plaintiff may plead [him]self out of court" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quotation marks and citation omitted).

Federal Rule of Civil Procedure 9(b) heightens these pleading requirements for all claims that "sound in fraud" or are "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must

---

[2] Originally, Defendants also moved to dismiss claims 1, 2, and 5–9 against Digilock as duplicative of counterclaims in a related case pending before the Court. Mot. at 20–23. However, after Plaintiff voluntarily dismissed these counterclaims, Defendants withdrew that portion of their motion. Reply at 2 n.1.

2

state with particularity the circumstances constituting fraud or mistake."). "[The Ninth Circuit] has interpreted Rule 9(b) to require that allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993) (quotation marks and citation omitted). In short, a fraud claim must state "the who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of was false and misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc), *superseded by statute on other grounds as recognized in Ronconi v. Larkin*, 252 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Finally, where multiple defendants are accused of fraudulent conduct, the plaintiff must identify the role of each defendant in the alleged fraudulent scheme. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule 9(b) does not allow a complaint to merely lump multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.").

## III. DISCUSSION

The Court assesses the motion first as to Mr. Gokcebay and next as to Digilock.

### A. Claims against Asil Gokcebay

Defendants argue that Plaintiff has failed to assert facts that adequately plead Mr. Gokcebay's personal liability as to all claims. Mot. 24. The Court analyzes this argument first as to claims 1–8 and second as to claim 9.

#### i. Claims 1–8

Claims 1–8 against Mr. Gokcebay are inadequately pled. In assessing compliance with Rule 8(a), the Ninth Circuit has stressed the importance of the complaint being "intelligible and clearly delineat[ing] the claims and the Defendants against whom the claims are made." *See Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1132 (9th Cir. 2008). Similarly, district

courts have found that complaints were inadequately pled where they did not inform the defendants "of the nature of the liability theories they face[d] in an action," *see Mason v. Cty. of Orange*, 251 F.R.D. 562, 563 (C.D. Cal. 2008), or would require the court to "sift through the complaint and guess which facts go to which claim, or how each defendant relates to each cause of action," *see Pinzon v. Jensen*, No. 1:08-CV-1543AWIGSA, 2009 WL 231164, at *2 (E.D. Cal. Jan. 30, 2009). Here, in describing the parties, the operative complaint states that Mr. Gokcebay has been the President and CEO of Digilock since the company's incorporation, and states on information and belief that Mr. Gokcebay has personally authorized or engaged in the allegedly wrongful conduct committed by Digilock. FAC ¶ 4. However, claims 1–8 do not refer to Mr. Gokcebay (only to Digilock), *id* ¶¶ 68–99, though they incorporate by reference the preceding paragraphs (including paragraph 4), *id.* ¶¶ 68, 83, 88, 94, 100, 117, 125. The Court finds these allegations inadequate. Without alleging specific facts regarding Mr. Gokcebay's conduct, Plaintiff has not intelligibly stated claims 1–8 against him, leaving him insufficiently informed about the liability theories he faces and requiring the Court to speculate regarding how Mr. Gokcebay has participated in these alleged violations. Allowing these claims to proceed as pled against Mr. Gokcebay would therefore be inappropriate. *See Mason*, 251 F.R.D. at 563–64 ("Experience teaches that, unless cases are pled clearly and precisely, issues are not joined, discovery is not controlled, the trial court's docket becomes unmanageable, the litigants suffer, and society loses confidence in the court's ability to administer justice.").

### ii. Claim 9

In contrast, Plaintiff includes specific facts regarding Mr. Gokcebay's individual conduct as to claim 9. FAC ¶¶ 128–170. The Court therefore analyzes whether Plaintiff sufficiently pleads inequitable conduct, or fraud on the Patent and Trademark Office ("PTO").

As the "atomic bomb" of patent law, inequitable conduct is assessed under a heightened pleading standard. *Therasense Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1288 (Fed. Cir. 2011) (en banc) ("Unlike validity defenses, which are claim specific, inequitable conduct regarding any single claim renders the entire patent unenforceable." (citation omitted)). "Inequitable conduct, while a broader concept than fraud, must be pled with particularity under

4

1  Rule 9(b)." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009)
2  (quotation marks and brackets omitted). The Federal Circuit has set out the pleading standard as
3  follows:

> [T]o plead the "circumstances" of inequitable conduct with the requisite "particularity" under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO. Moreover, although "knowledge" and "intent" may be averred generally, a pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO.

*Id.* at 1328–29. Finally, "[a] reasonable inference is one that is plausible and that flows logically from the facts alleged, including any objective indications of candor and good faith." *Id.* at 1329 n.5.[3]

### a. Whether Plaintiff Pleads Sufficient Facts to Satisfy Rule 9(b)

The "who" of the pleading must be a "specific individual associated with the filing or prosecution of the application issuing as [the patent in suit], who both knew of the material information and deliberately withheld or misrepresented it." *Id.* at 1329. As one of the inventors listed on the '180 Patent, Mr. Gokcebay had a duty to disclose material information on patentability to the PTO Examiner. *See* FAC ¶ 48; 37 C.F.R. § 1.56(a)–(c). Plaintiff alleges Mr. Gokcebay was aware that prior-issued U.S. Patent No. 5,337,043 ("'043 Patent") and its parent U.S. Patent No. 5,245,329 ("'329 Patent") were material to the application that led to the '180 Patent. FAC ¶¶ 156, 163, 164. Despite this knowledge, Mr. Gokcebay allegedly failed to disclose either the '043 or '329 Patents to the PTO Examiner. *Id.* ¶¶ 132–33, 167. Plaintiff sufficiently alleges the "who" of inequitable conduct by identifying Mr. Gokcebay as responsible for the

---

[3] *Therasense* ratcheted up the requirements for proving inequitable conduct on the merits, but did not change the pleading standard articulated in *Exergen*. *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011) (adopting the *Exergen* standard for determining the sufficiency of pleadings in a post-*Therasense* case); *Nalco Co. v. Turner Designs, Inc.*, No. 13-CV-02727 NC, 2014 WL 645365, at *3 (N.D. Cal. Feb. 19, 2014) ("Although *Therasense* raised the bar for proving inequitable conduct on the merits, it did not change the standard for pleading inequitable conduct.").

wrongful omission.

The "what" and "where" of the pleading must identify "which claims, and which limitations in those claims, the withheld references are relevant to, and where in those references the material information is found." *Exegen Corp.*, 575 F.3d at 1329. The original application for the '180 Patent recited the limitation of "a special key slot for receipt of a small key comprising identification circuitry for use by a manager for accessing the lock unit without need for entry of a manager code on the keypad." FAC ¶ 141. During her review, the PTO Examiner was unable to locate the "key slot" limitation in the prior art. *Id.* ¶ 142. Defendants afterward amended the application such that claims 2 and 4 of the '180 Patent now recite, "a key reader receptacle for receiving an identification device as an alternative means for accessing the lock." *Id.* ¶¶ 130, 144–49.

Plaintiff pleads that the '043 and '329 Patents address the "key slot" limitation by disclosing an "Access Control System with Mechanical Keys Which Store Data." *Id.* ¶¶ 130, 133. The '043 and '329 Patents share a specification of a keypad used to input a code or access the lock. *Id.* ¶ 151. The '043 Patent discloses that a user can access a lock entering a code on a key pad that matches data found on a physical key. *Id.* ¶ 150 (citing '043 Patent at 12:41–47 (describing "the access control point further including keypad means for receiving entry of a PIN number by a keyholder and comparison means for comparing the entered PIN number with data read from the key, with means for permitting the keyholder access at the access control point if a match is found by the comparison means")). The '043 Patent further discloses that a user can use the physical key as an alternative means of entry without entering a code. *Id.* ¶ 152 (citing '043 Patent at 8:18–26 ("The special key for the keyway 34 can override the electronic system under certain conditions such as an emergency, but with special high-security keys for this keyway 34 only possessed by certain high-security personnel.")). Plaintiff asserts these disclosures are also evident in figures 3 and 6 of the '043 Patent, showing a reader panel that contains both a keypad for manually inputting a code and a "keyway" or "slot." *Id.* ¶ 133. The Court finds the foregoing allegations sufficient to plead the "what" and "where" of inequitable conduct.

The "why" and "how" of the pleading must identify "the particular claim limitations, or

combination of claim limitations, that are supposedly absent from the information of record." *Exegen Corp.*, 575 F.3d at 1329. "Such allegations are necessary to explain both 'why' the information withheld is material and not cumulative, and 'how' an examiner would have used this information in assessing the patentability of the claims." *Id.* at 1329–30. Generally, materiality must be "but-for materiality," meaning that the withheld reference would have led to the PTO's rejection of the patent application. *See Therasense,* 649 F.3d at 1291 ("When an applicant fails to disclose prior art to the PTO, that prior art is but-for material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art."). Therefore, at the pleading stage,

> [T]he accused infringer must identify some fact that would make it plausible that the PTO would not have granted the patent but-for the misrepresentation. In other words, the mere fact that a misrepresentation occurred is not enough to show that the PTO would not have issued the patent. Instead, the accused infringer must show facts indicating that the PTO was particularly concerned with a representation, or that the truth, if presented to the PTO, would have rendered the invention unpatentable.

*Human Genome Scis., Inc. v. Genentech, Inc.*, No. 2:11-CV-6519-MRP, 2011 WL 7461786, at *4 (C.D. Cal. Dec. 9, 2011).

Plaintiff asserts that the patents are "material to patentability of the '180 Patent because the disclosures of those patents combined with prior art of record render claims 2 and 4 obvious." FAC ¶ 155. Specifically, the FAC alleges that U.S. Patent 4,914,022 ("'022 Patent"), which was identified by the PTO Examiner, together with the '043 and '329 Patents, which were not identified by the PTO or by Defendants' Information Disclosure Statement ("IDS"), would have disclosed every limitation contained in claims 2 and 4 of the '180 Patent. *Id*. ¶¶ 155, 169. The '022 Patent revealed all limitations of claims 2 and 4 of the '180 Patent, except "a key reader receptacle to receive an identification device." *Id.* ¶ 155. Plaintiff asserts that this limitation is contained in the '043 and '329 Patents and that if Mr. Gokcebay had presented the previously issued patents to the PTO Examiner, they would have constituted invalidating references for claims 2 and 4 of the '180 Patent. *Id.* ¶ 157. Plaintiff also states that the '043 and '329 Patents are not cumulative of any references cited in Defendants' IDS because none of these ten references disclosed "a lock accessing device with both a keypad for entry of a code and a key reader receptacle for receiving an identification device." *Id.* ¶ 161. The Court finds these allegations

sufficient to plead the "why" and "how" of inequitable conduct.

### b. Whether Plaintiff Adequately Pleads Mr. Gokcebay's Knowledge of the '329 and '043 Patents

Plaintiff alleges that Mr. Gokcebay was aware of the existence and materiality of the '043 and '329 Patents because Mr. Gokcebay is the sole listed inventor on both patents. *Id.* ¶ 163. He was involved in two previous lawsuits asserting infringement of the '043 Patent and submitted declarations in both these cases. *Id.* ¶ 164. Additionally, Plaintiff alleges that Mr. Gokcebay was aware of the '329 Patent because this patent was cited during the prosecution of several other patents on which Gokcebay is listed as an inventor. *Id.* ¶ 166. These facts reasonably support an inference that Mr. Gokcebay knowingly withheld material information regarding the '043 and '329 Patents during the prosecution of the '180 Patent.

### c. Whether Plaintiff Adequately Pleads Mr. Gokcebay's Specific Intent to Deceive the PTO

Lastly, Plaintiff pleads "on information and belief" that Mr. Gokcebay "withheld disclosure of the ['329 and 043 Patents] to the [PTO] with the specific intent to deceive the [PTO] and induce issuance of the claims of the '180 Patent." *Id.* ¶167. "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, but only if the pleading sets forth the specific facts upon which the belief is reasonably based." *Exergen*, 575 F.3d at 1330.

Plaintiff asserts that the court can infer specific intent because Defendants did not submit the IDS until after the PTO had announced its intent to issue the '180 Patent and after the PTO Examiner had been unable to find a "key slot" in the prior art. FAC ¶ 169 ( "[N]o IDS was submitted in the application that led to the '180 Patent until May 15, 2003, long *after* the Examiner's Office Action of October 1, 2002 in which she noted she could not find a 'key slot' in the prior art . . . *and after* the Examiner's Notice of Allowability of May 14, 2003." (emphasis in original)). Plaintiff alleges that Mr. Gokcebay cannot justify the decision to submit an IDS without the '043 or '329 Patent because the references identified in the IDS are not cumulative of the '043 and '329 Patents. *Id.* ¶ 161; *see also Young v. Lumenis, Inc.*, 492 F.3d 1336, 1349 (Fed.

Cir. 2007) ("The essence of the duty of disclosure is to get relevant information before an examiner in time for him to act on it."). The delay in submitting the IDS and the decision not to include the '043 and '329 Patents in the submission reasonably support an inference that Mr. Gokcebay intentionally violated of his duty to disclose. *See Audionics Sys. Inc. v. AAMP of Florida, Inc.*, No. CV 12-10763 MMM (JEMx), 2015 WL 12712288, at *30–31 (C.D. Cal. July 10, 2015) (finding that never disclosing prior art references to the patent examiner gives rise to a plausible inference of knowing intent to deceive). The Court finds Plaintiff has sufficiently alleged facts supporting an inference that Mr. Gokcebay acted with the specific intent to deceive the PTO. *See Exergen*, 575 F.3d at 1330. Therefore, claim 9 against Mr. Gokcebay survives.

### B. Claims against Digilock

Defendants move to dismiss the claims against Defendant Digilock under the following theories: (1) claims 1–4 should be dismissed for failure to plausibly allege a product market; and (2) claims 3–4 should be dismissed for failure to plausibly allege substantial foreclosure from the market. Mot. at 11–20.

The Court first addresses Defendants' assertion that Plaintiff's antitrust claims should be dismissed for failure to allege a plausible product market. *See* Mot. at 11–15. Claims 1–4 allege (1) monopolization and (2) attempted monopolization under section 2 of the Sherman Act; (3) exclusive dealing under section 3 of the Clayton Act; and (4) combination to monopolize under the Cartwright Act. FAC ¶¶ 68–99. Defining the relevant product market is "indispensable" to Plaintiff's federal antitrust claims. *See Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1373–74 (9th Cir. 1989) (requiring plaintiff to delineate a relevant market for claims under § 2 of the Sherman Act); *Omega Envtl., Inc. v. Gilbarco, Inc.*, 127 F.3d 1157, 1162 (9th Cir. 1997) (defining the relevant market prior to analyzing claims under section 3 of the Clayton Act). This is equally true of Plaintiff's state antitrust claim. *See Cty. of Tuolumne v. Sonora Cmty. Hosp.*, 236 F.3d 1148, 1160 (9th Cir. 2001) ("The analysis under California's antitrust law mirrors the analysis under federal law because the Cartwright Act was modeled after the Sherman Act." (citation omitted)); *Dang v. S.F. Forty Niners*, 964 F. Supp. 2d 1097, 1104 (N.D. Cal. 2013) (applying relevant market requirement to both California and federal antitrust law claims and

9

assessing the claims together). Therefore, the Court engages in the same analysis to determine whether Plaintiff alleges a plausible product market for all four antitrust claims.

"Since the validity of the 'relevant market' is typically a factual element rather than a legal element, alleged markets may survive scrutiny under Rule 12(b)(6) subject to factual testing by summary judgment or trial" as long as the product market definition is not unsustainable on its face. *Newcal Indus. v. IKON Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). The Ninth Circuit has articulated the following legal principles for assessing whether the definition of the relevant market has been adequately pled:

> First and foremost, the relevant market must be a *product* market.[4] The consumers do not define the boundaries of the market; the products or producers do. *Brown Shoe v. United States,* 370 U.S. 294, 325 (1962). Second, the market must encompass the product at issue as well as all economic substitutes for the product. *Id.* As the Supreme Court has instructed, "The outer boundaries of a product market are determined by the reasonable interchangeability of use or the cross-elasticity of demand between the product itself and substitutes for it." *Id.* As such, the relevant market must include "the group or groups of sellers or producers who have actual or potential ability to deprive each other of significant levels of business." *Thurman Industries, Inc. v. Pay 'N Pak Stores, Inc.,* 875 F.2d 1369, 1374 (9th Cir. 1989).
>
> Third, although the general market must include all economic substitutes, it is legally permissible to premise antitrust allegations on a submarket. That is, an antitrust claim may, under certain circumstances, allege restraints of trade within or monopolization of a small part of the general market of substitutable products. In order to establish the existence of a legally cognizable submarket, the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market. In *Brown Shoe,* the Supreme Court listed several "practical indicia" of an economically distinct submarket: "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." 370 U.S. at 325.

*Id.* (emphasis in original) (parallel citations omitted). Although the *Brown Shoe* indicia are used as "practical aids" in the submarket analysis, the presence or absence of any particular factor is not dispositive. *Thurman Indus.*, 875 F.2d at 1375.

Plaintiff asserts that the relevant product market is comprised of just EKLs. FAC ¶ 69. Plaintiff claims to support a narrow submarket by contending that EKLs have unique

10

characteristics, uses, vendors, customers, treatment within the industry, and price-change sensitivity. *See* Opp. at 9–10. Plaintiff asserts that EKLs allow users to use lockers temporarily by selecting and entering a code on a keypad. FAC ¶ 14. Custom programming and master key functionality allow for keyless entry to facilitate better management. *Id.* ¶ 17. EKLs are sold to original equipment manufacturers ("OEMs") and other dealers or distributors, and sometimes directly to end users, such as fitness clubs, universities, and businesses with locker rooms. *Id.* ¶ 50. The demand for EKLs is growing. *Id.* ¶ 50. Customers select EKLs over other less desired lock products with similar features because their choice of lock product impacts their patronage. *Id.* ¶ 52. Additionally, Plaintiff states that a small, but significant, non-transitory increase in the price ("SSNIP") of EKLs would not cause customers to switch enough quantity of their purchases to another product so as to make the price increase unprofitable for a firm with monopoly power over the market for EKLs. *Id.* ¶ 53. Digilock has allegedly imposed such price increases for its electronic locks for lockers and maintained its prices at supra-competitive levels, including in early 2016. *Id.* ¶ 53.[4]

The Court agrees with Defendant that Plaintiff makes conclusory statements and fails to justify a distinct EKL submarket. *See* Mot. at 13. Plaintiff cannot argue that OEMs are unique vendors for EKLs since it has pled that OEMs also purchase and promote mechanical locks. *See* FAC ¶ 5. Similarly, Plaintiff has not articulated how fitness clubs, universities, and businesses with locker rooms are distinct customers of EKL products. While Plaintiff pleads that EKLs enable users to use lockers temporarily, Plaintiff has not stated facts plausibly showing that this characteristic is peculiar to EKLs. *See* FAC ¶ 14. Furthermore, Plaintiff only alleges that Digilock imposed SSNIPs for its "electronic locks for lockers," not for EKLs specifically. *See* FAC ¶ 53. This does not plausibly support Plaintiff's assertion that there is not reasonable interchangeability between EKLs and electronic non-keypad lock products. *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002 (9th Cir. 2008) ("If a monopolist

---

[4] The Court does not consider additional indicators of a submarket that were asserted in Plaintiff's opposition but not alleged in the operative complaint. *See* Opp. at 9; *Swartz*, 476 F.3d at 763 (stating that generally courts may not look to materials outside of the complaint to rule on a Rule 12(b)(6) motion, while noting certain exceptions that are irrelevant here).

11

could not profitably impose a SSNIP, the market definition should be expanded to include those substitute products that constrain the monopolist's pricing."). Plaintiff does not sufficiently plead a narrow EKL product market definition. *See Tanaka v. Univ. of S. Cal.*, 252 F.3d 1059, 1063 (9th Cir. 2001) (finding plaintiff failed to plausibly assert a relevant product market when plaintiff alleged only conclusory statements for why UCLA women's soccer team was "unique" and therefore not reasonably interchangeable with other universities' athletic programs).

Even if Plaintiff had plausibly alleged a relevant product market, claims 3–4 would still fail because Plaintiff has not sufficiently pled the portion of the product market foreclosed by the partnership agreements. Plaintiff asserts that Digilock violated the Clayton Act and the Cartwright Act by entering into exclusivity contracts that unlawfully restrict trade. FAC ¶¶ 89–91, 95–97. However, for any antitrust claim, Plaintiff must plead an antitrust injury. *See Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (declaring that an antitrust claimant must state allegations that "raise a reasonable expectation that discovery will reveal evidence of an injury to competition" that goes "beyond the impact on the plaintiffs themselves" (quotation marks omitted)). Plaintiff alleges Digilock's partner agreements injure competition by "foreclos[ing] at least 70% of all sales in the relevant market." FAC ¶ 90. However, the Court finds this figure to be unsubstantiated. Plaintiff's opposition explains how Plaintiff derived that figure: "Digilock itself boasts that it commands 90% of the [EKL] market, and that it makes 75-80% of its sales of locks to OEMs." Opp. at 13 (citing FAC ¶¶ 12, 43). However these figures only plausibly support that 70% of the EKL market is comprised of all OEMs, not just the three OEMs in partner agreements with Digilock. Similarly, Plaintiff's allegation that "architects specify Digilock locks 80% of the time" does not plausibly support any conclusions regarding the EKL market in particular. *See* FAC ¶ 43. Overall, the allegations of the operative complaint do not raise a reasonable expectation that discovery will produce evidence regarding any injury to competition going beyond Plaintiff. *See Brantley*, 675 F.3d at 1198. Consequently, the Court finds that Plaintiff has failed to plead an antitrust injury.

Claims 1–4 against Digilock must therefore be dismissed.

## IV. LEAVE TO AMEND

The Court is dismissing claims 1–8 against Gokcebay and claims 1–4 against Digilock. If dismissal is appropriate under Rule 12(b)(6), a court "should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quotation marks and citation omitted). Since it is possible that the flaws in the operative complaint can be cured by the allegation of other facts, the Court grants Plaintiff leave to amend. *See id.* at 1130. Any second amended complaint must clearly and concisely state the basis for all claims alleged.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part Defendants' motion to dismiss.[5] Any second amended complaint must be filed within 28 days of the date of this Order. In addition to the "clean" version of the second amended complaint, such a filing shall also include a "redlined" version clearly indicating all amendments.

**IT IS SO ORDERED.**

Dated: 8/2/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] In addition, the Court **DENIES** as moot Plaintiff's request for judicial notice, Dkt. No. 35, because the Court did not rely on the documents in question to reach its disposition.

13