UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OJMAR US, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>SECURITY PEOPLE, INC., et al.,<br><br>    Defendants. | Case No. 16-cv-04948-HSG<br><br>**ORDER DENYING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Re: Dkt. No. 120 |

On September 20, 2017, Defendants Security People, Inc. ("Digilock") and Asil Gokcebay moved to dismiss the second amended complaint filed by Plaintiff Ojmar U.S., LLC ("Ojmar"). Dkt. No. 120 ("Mot."); *see also* Dkt. No. 117 ("SAC"). On October 4, 2017, Plaintiff opposed the motion. Dkt. No. 125 ("Opp."). On October 11, 2017, Defendants replied. Dkt. No. 128 ("Reply"). On October 26, 2017, the Court held a hearing on the motion. *See* Dkt. No. 129. After careful consideration, the Court **DENIES** the motion to dismiss.

## I. BACKGROUND

The SAC sets forth the following eight causes of action: (1) monopolization and (2) attempted monopolization under the Sherman Act, 15 U.S.C. § 2; (3) combination to monopolize under the Cartwright Act, Cal. Bus. & Prof. Code §§ 16720, et seq.; (4) false advertising under the Lanham Act § 43(a), 15 U.S.C. § 1125; (5) trade libel; (6) intentional interference with economic relationship; (7) unfair competition, Cal. Bus. & Prof. Code §§ 17200, et seq.; and (8) inequitable conduct. SAC ¶¶ 114–210. Plaintiff stated these same causes of action in a first amended complaint, along with an additional cause of action for exclusive dealing under the Clayton Act, 15 U.S.C. § 14. *See* Dkt No. 14-4 ("FAC") ¶¶ 88–93.

On August 2, 2017, the Court granted in part and denied in part Defendants' motion to

dismiss the FAC. Dkt. No. 104 ("Dismissal Order").[1] In so doing, the Court found that Plaintiff failed to adequately plead all claims against Mr. Gockebay, except for claim 9 seeking a declaration of inequitable conduct. *See id.* at 3–9. The Court also dismissed Plaintiff's antitrust claims against Digilock, finding that Plaintiff failed to adequately plead a viable product market or submarket under the Sherman Act, and antitrust injury as required by the Cartwright Act and the Clayton Act. *Id.* at 11–12. On September 19, 2017, Plaintiff filed the SAC. Dkt. No. 117.

## II. DISCUSSION

Defendants move to dismiss the SAC on three bases: (1) claims 1–2 fail to allege a plausible market or submarket; (2) claim 3 does not plausibly allege antitrust injury; and (3) claims 4–7 do not adequately set forth causes of action for false advertising, trade libel, intentional interference with economic relationship, and unfair competition. Defendants argue that if the Court dismisses all of Plaintiff's other causes of action, it should decline to exercise permissive jurisdiction over claim 8, which seeks a declaration of inequitable conduct.

### A. Claims 1–3

While the Dismissal Order set forth the relevant legal standards governing the SAC's antitrust claims, the following two principles bear repeating. First, an alleged product market must be sustainable on its face to survive a motion to dismiss. *Newcal Indus., Inc. v. Ikon Office Sol.*, 513 F.3d 1038, 1045 (9th Cir. 2008). Second, the relevant product market must include "the product at issue as well as all economic substitutes for the product." *Id.* The question of economic substitution is determined by "reasonable interchangeability of use" or "cross-elasticity of demand." *Id.* As alleged, a product market must include all sellers who have "actual or potential ability to deprive each other of significant levels of business." *Thurman Indus., Inc. v. Pay 'N Pak Stores, Inc.*, 875 F.2d 1369, 1374 (9th Cir. 1989). "If a plaintiff 'alleges a proposed relevant market that clearly does not encompass all interchangeable substitute products even when all factual inferences are granted in plaintiff's favor, the relevant market is legally insufficient and

---

[1] The Court detailed the factual background in its Dismissal Order, and incorporates those unchanged facts and the legal analysis from the Dismissal Order here. In this order, the Court only discusses the facts and legal standards as necessary to address the new issues raised in the second amended complaint and the renewed motion to dismiss.

2

a motion to dismiss may be granted.'" *Hicks v. PGA Tour, Inc.*, 165 F. Supp. 3d 898, 908 (N.D. Cal. 2016) (quoting *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997)).

### i. The Alleged Product Market and Submarket

The Court turns first to whether Plaintiff adequately alleges a plausible product market. Plaintiff defines the relevant product market as "electronic keypad operated locks with electrically actuated bolts for shared-use lockers" ("EKLs"). SAC ¶ 61. Plaintiff asserts that EKLs are distinct from other lock systems, including (1) shared-use mechanical locks, SAC ¶¶ 73–74; (2) shared-use mechanical locks with electronic keypads, SAC ¶ 75; and (3) electronic radio-frequency identification ("RFID") locks, which are electronic locks without keypads, SAC ¶ 76. Plaintiff asserts that EKLs are not substitutable with shared-use mechanical locks because EKLs possess "significant additional capabilities and a premium image." SAC ¶¶ 73–75, 80–89. According to Plaintiff, these additional capabilities or features include (1) auto-unlock capability, generally unavailable in "manually operated mechanical locks;" (2) additional lock management features; (3) a significantly higher price point; (4) decreased battery life; and (5) convenience and user-friendliness because electric bolts require less "manual dexterity." *See id*.

Even viewed in the light most favorable to Plaintiff, these allegations fail to show that lock purchasers would forgo other types of shared-use lock systems if EKLs experienced a "small but significant nontransitory increase in price (SSNIP)." *See Theme Promotions, Inc. v. News Am. Mktg. FSI*, 546 F.3d 991, 1002 (9th Cir. 2008) (analyzing purchaser reaction to a SSNIP as a measure of cross-elasticity) (quotation omitted). The SAC's allegations suggest, at best, that EKLs possess certain desirable traits and features. Such allegations fail as a matter of law to demonstrate the absence of economic substitutability, the benchmark for a facially sustainable product market. *See Thurman Indus., Inc.*, 875 F.2d at 1374; *In re Super Premium Ice Cream Distribution Antitrust Litig.*, 691 F. Supp. 1262, 1268 (N.D. Cal. 1988), *aff'd sub nom. Haagen-Dazs Co. v. Double Rainbow Gourmet Ice Creams, Inc.*, 895 F.2d 1417 (9th Cir. 1990) ("Courts have repeatedly rejected efforts to define markets by price variances or product quality variances. Such distinctions are economically meaningless where the differences are actually a *spectrum* of

3

price and quality differences.") (emphasis in original). Other California district courts have found similar trait-focused allegations inadequate as a matter of law. *See Streamcast Networks, Inc. v. Skype Techs., S.A.*, 547 F. Supp. 2d 1086, 1095 (C.D. Cal. 2007) (dismissing antitrust allegations because the product, despite possessing "some unique attributes and components that make it more attractive and efficient," allowed users to "accomplish the same basic task"); *Stubhub, Inc. v. Golden State Warriors, LLC*, No. C 15-1436 MMC, 2015 WL 6755594, at *3 (N.D. Cal. Nov. 5, 2015) (finding non-cognizable alleged markets for primary and secondary admission tickets because the tickets accomplished the same purpose: obtaining entry into a basketball game); *cf. TYR Sport Inc. v. Warnaco Swimwear Inc.*, 679 F. Supp. 2d 1120, 1129–30 (C.D. Cal. 2009) (sustaining the alleged market for "high-end competitive swimwear" because "elite athletes" likely would not abandon performance wear for casual swimsuits if faced with a small price increase in the former).

In finding Plaintiff's alleged product market implausible, the Court is particularly persuaded by the reasoning in *Hicks v. PGA Tour, Inc.*, 165 F. Supp. at 908–10. In *Hicks*, professional golf caddies alleged that the PGA Tour violated Sections 1 and 2 of the Sherman Act by requiring them to wear "bibs" bearing advertisements. *Id.* at 902, 908. The caddies stated two relevant product markets: "the Endorsement Market and the Live Action Advertising Market." *Id.* at 909 (quotation omitted). The court held that these markets were "so narrowly defined" that it rendered implausible the allegation that an increase in the price of one marketing type would not affect the demand for other marketing types. *Id.* at 910. The court found insufficient as a matter of law allegations raising the differences between, and benefits of, certain advertising types. *See id.* ("To be sure, not all forms of advertising are the same, and some forms have benefits that others don't. . . . However, it's not enough to allege that these forms of advertising have differences."). Likewise here, the SAC's detailed description of different lock technologies relates only to the respective systems' peculiar features. These allegations do not show that lock purchasers would eschew less expensive lock systems equally capable of accomplishing an EKL's same basic purpose: securing property. As in *Hicks*, the Court accordingly concludes that Plaintiff's alleged EKL product market is "not natural," and is instead "contorted to meet

4

1 [Plaintiff's] litigation needs." 165 F.Supp. 3d at 910.

Though Plaintiff fails to define a plausible product market, a cognizable antitrust claim may be premised on an economically distinct submarket—i.e. a "small part of the general market of substitutable products." *Newcal Indus., Inc.*, 513 F.3d at 1045. These submarkets, "in themselves, constitute product markets for antitrust purposes." *Brown Shoe Co. v. U.S.*, 370 U.S. 294, 325 (1962). "In order to establish the existence of a legally cognizable submarket, the plaintiff must be able to show (but need not necessarily establish in the complaint) that the alleged submarket is economically distinct from the general product market." *Newcal Indus., Inc.*, 513 F.3d at 1045. The indicia of a valid submarket include: "industry or public recognition of the submarket as a separate economic entity, the product's peculiar characteristics and uses, unique production facilities, distinct customers, distinct prices, sensitivity to price changes, and specialized vendors." *Brown Shoe Co.*, 370 U.S. at 325.

The SAC includes several allegations to show that EKLs are economically distinct from other lock types in the general market for locker locks. The SAC details several EKL features that high-end lock consumers allegedly value. *See* SAC ¶¶ 79, 80–89, 102. According to Plaintiff, these attributes provide EKLs with enhanced functionality, user-friendliness, and convenience in relation to other lock types. *See id.* It is conceivable that lock purchasers could view these particular attributes as differentiating, or perceive some combined value-add when shopping for EKLs. *See Magnetar Techs. Corp. v. Intamin, Ltd.*, No. CV071052GAFJWJX, 2011 WL 13133973, at *5 (C.D. Cal. May 11, 2011) (finding that magnetic brakes could constitute a "distinct submarket" because of "unique safety benefits that consumers value" even if magnetic brakes occupied the same general product market as mechanical brakes); *In re Webkinz Antitrust Litig.*, 695 F. Supp. 2d 987, 995 (N.D. Cal. 2010) (recognizing as facially sustainable a plush toy submarket in a broader market for toy products). The Court therefore concludes that, at this preliminary stage, EKLs plausibly constitute a submarket within the broader locker lock market.[2]

---

[2] Defendants stressed at oral argument that virtually any product with "unique" features could constitute its own submarket. The Court finds the inquiry of whether EKLs do, in fact, constitute a viable submarket is appropriately addressed at the summary judgment stage. For similar reasons, the Court finds it unnecessary and premature to incorporate by reference Plaintiff's expert

5

Claims 1 and 2 of the SAC consequently survive the motion to dismiss.

### ii. Antitrust Injury

Defendants renew their challenge to Plaintiff's claim under the Cartwright Act. Mot. at 17–18. Defendants argue that the complaint lacks non-conclusory allegations suggesting that Digilock either (1) foreclosed a substantial share of the EKL market through its exclusive dealings with original equipment manufacturers ("OEMs"); or (2) caused injury to competition beyond that suffered by Plaintiff. *See id.* "In California, exclusive dealing arrangements are . . . proscribed when it is probable that performance of the contract will foreclose competition in a substantial share of the affected line of commerce." *Fisherman's Wharf Bay Cruise Corp. v. Sup. Ct.*, 7 Cal. Rptr. 3d 628, 649 (2003) (quotation omitted). "Since the Cartwright Act and the federal Sherman Act share similar language and objectives, California courts often look to federal precedents under the Sherman Act for guidance." *Id.* To survive a motion to dismiss, the complaint must plausibly "sketch the outline of the injury to competition with allegations of supporting factual detail." *Brantley v. NBC Universal, Inc.*, 675 F.3d 1192, 1198 (9th Cir. 2012) (internal quotation and alterations omitted).

The Court finds that the SAC states sufficient facts to plausibly show antitrust injury. Plaintiff alleges that Digilock commands around 90% of the U.S. market for EKLs, in which OEMs play a critical purchasing role. SAC ¶¶ 67, 97–98. Plaintiff states that Digilock wielded its anticompetitive power by coercing at least five OEMs to sign exclusive agreements, effectively preventing these companies from selecting other lock technologies. *Id.* ¶¶ 92–103. Plaintiff asserts that this artificially elevated the prices for EKLs, harming competition and consumers. *Id.* ¶¶ 50–52, 90–98. The SAC explains how Digilock's exclusive agreements imposed market and opportunity costs by "constraining [OEMs'] choices." *Id.* ¶ 95. According to Plaintiff, OEMs are "by the far the best channel for a new entrant considering a move into the EKL market." *Id.* ¶ 97.

---

report. *See* Opp. at 2–3, 4 n.1; *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011) (stating that a court can consider materials outside the pleadings "on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the document").

Plaintiff alleges that Digilock's exclusive dealings consequently foreclosed a substantial share of the competition in the alleged submarket. *Id.* Courts have found such injuries sufficient as a matter of law to sustain claims for anticompetitive behavior. *See Theme Promotions, Inc.*, 546 F.3d at 1003 ("Coercive activity that prevents choice between market alternatives, including agreements to restrain trade, is one form of antitrust injury.").[3] The Court therefore concludes that claim 3 survives Defendants' motion to dismiss.

### B. Claims 4–8

Defendants seek to dismiss Plaintiff's claims for violations of the Lanham Act, and for various California torts. Mot. at 18–24. Defendants likewise request that the Court decline to exercise jurisdiction over claim 8 if the Court dismisses the remainder of Plaintiff's complaint. Mot. at 24–25.[4] Plaintiff argues that claims 4–8 of the SAC remain substantively identical to claims 5–9 of the FAC, and thus that Federal Rule of Civil Procedure ("Rule") 12(g)(2) bars Defendants from renewing their motion to dismiss these causes of action. Opp. at 3, 20–21.

The Court agrees. Rule 12(g)(2) provides, with exceptions that do not apply here: "[A] party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." Defendants' renewed motion to dismiss advances arguments that were available to Defendants when they filed their initial dismissal motion. Furthermore, the Court expressly advised Defendants that they would not be allowed any "do-overs" in attacking claims that survived the initial dismissal motion. *See* Opp. at 21; Reply at 11; *Hild v. Bank of Am., N.A.*, No. EDCV 14-2126 JGB SPX, 2015 WL 1813571, at *3 (C.D. Cal. Apr. 21, 2015) (prohibiting the defendant "from taking a second bite at the apple after neglecting to set forth arguments that were fully available to it when moving to dismiss the FAC"). The Court declines Defendants' request to now

---

[3] While not binding on the Court, the Ninth Circuit's recent treatment of antitrust injury in *CollegeNET, Inc. v. Common Application, Inc.*, No. 15-35443, 2017 WL 4772552 (9th Cir. Oct. 23, 2017) is also persuasive. *See* p *1 (deeming sufficient at the pleading stage allegations that the defendant reduced choice in the applicable market, "decreased the scope of services and price competition . . . and foreclosed rivals from entry to the market, thereby reducing overall market satisfaction 'by leaving one dominant provider offering inferior products and services.'" ).

[4] Defendants refer to Plaintiff's request for a declaratory judgment as claim 9 in their motion to dismiss. Mot. at 24. The SAC asserts this as the eighth cause of action. *See* SAC ¶ 48.

do exactly that. *See In re Packaged Seafood Prod. Antitrust Litig.*, No. 15-MD-2670 JLS (MDD), 2017 WL 4271894, at *4–5 (S.D. Cal. Sept. 26, 2017) (declining to exercise discretion under Rule 12(g)(2) to consider a defense that would otherwise be barred by the rule); *Northstar Fin. Advisors Inc. v. Schwab Investments*, 135 F. Supp. 3d 1059, 1070–72 (N.D. Cal. 2015) (rejecting an attempt to "re-assert in a successive motion to dismiss arguments that Defendants abandoned in a prior motion to dismiss"); *Romo v. Wells Fargo Bank, N.A.,* No. 15-CV-03708-EMC, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016) (agreeing, and collecting cases from this Circuit).

Defendants contend that Plaintiff's addition of the words "and Mr. Gockebay" entitles them to renew their attack on claims 4–8 of the SAC. Reply at 11; *see* SAC ¶¶ 140–164. Defendants argue that the claims against Digilock and Mr. Gockebay present "identical issues," and therefore that judicial economy favors allowing Defendants to challenge these claims in their entirety. Mot. at 11. Even taking Defendants' arguments at face value, this substantive overlap shows merely that Defendants could have addressed Plaintiff's allegations in their first motion to dismiss. Defendants highlighted that point by withdrawing their request to dismiss these claims from the FAC. *See* Dkt. No. 39 at 2 n.1; Dkt. No 21 at 20. In addition, Defendants' motion to dismiss frames the SAC's shortcomings almost exclusively in terms of Digilock—not Mr. Gockebay.[5] Thus, even if the Court allowed Defendants to make new arguments based on Mr. Gockebay's personal liability, the Motion sets forth no such contentions. Defendants accordingly cannot renew their challenge to Plaintiff's non-antitrust claims on these grounds.

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendants' motion to dismiss the SAC.

**IT IS SO ORDERED.**

Dated: 11/16/2017

HAYWOOD S. GILLIAM, JR.
United States District Judge

---

[5] In moving to dismiss claims 4–8, Defendants make an express reference to Mr. Gockebay based on a change to SAC ¶ 34. *See* Mot. at 20. But even there, Plaintiff merely substituted the word "Digilock" for "Mr. Gockebay," and Defendants refer to these entities interchangeably in refuting this particular allegation. *See id.*; SAC ¶ 34.